**THE FLORENCE HINES.**

**THE RUSSELL NO. 3.**

**STAPLES v. MANHATTAN LIGHT-**

**ERAGE CORPORATION et al.**

**No. 17068.**

District Court, E. D. New York.

March 13, 1946.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Stanley Wright, of New York City, of counsel), for respondent.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for plainant impleaded.

KENNEDY, District Judge.

This is a libel in rem by the owner of the scow Florence Hines against Manhattan Lighterage Corporation, which on January 28, 1944, chartered the scow from the libellant. Respondent, Manhattan Lighterage Corporation, impleaded the tug Russell No. 3.

On February 1, 1944, the Florence Hines was being towed from Pier 34, Brooklyn, to 8th Street, Hoboken, by the steam lighter Betty Lee, owned by respondent Manhattan Lighterage Corporation. The length of the Florence Hines is 120 feet, her beam is 36 feet and her depth is 10 feet 6 inches. When light she draws about one and a half feet. At the time of the collision from which the libel arose she was not heavily laden: she had on board three Army ducks weighing about seven tons apiece. Betty Lee left Pier 34, Brooklyn, at about 4:30 a. m. with Florence Hines on her port side. The tide was ebb in the East River, last of flood in the North River. When Betty Lee left Brooklyn a deckhand was at the wheel; the master was standing alongside of him in the pilot house. She had proper running lights which were burning brightly. According to her own story when she had Pier 26, Brooklyn, on her starboard beam she turned on left rudder and headed for the ferry slips at the Battery.

Meanwhile, Russell No. 3, which had come from Gulfport, Staten Island, was heading for the Harlem River. On her starboard side she had the loaded oil barge

Val No. 1. A New Haven tug (Transfer No. 12) with a carfloat on each side, also bound up the East River, had passed to port of the Russell No. 3 somewhere off Governor's Island Light. The New Haven tug was on the deep water range as she proceeded into the East River and Russell No. 3, with her tow, were then on the starboard quarter of Transfer No. 12.

The helmsman (a deckhand) on Betty Lee places Russell No. 3 two or three thousand feet astern of Transfer No. 12 when he first saw her, but it is clear that this distance is much too great. I believe that about 600 feet then separated Russell No. 3 and Transfer No. 12, and the gap was widening.

The wind was from northwest at gale force, so that when she made her turn for the Battery, the Betty Lee had it on her starboard bow. At the same time the ebb tide in the East River undoubtedly had some additional tendency to set her down in the direction of Governor's Island.

No whistle signals were exchanged at any time; but it is clear that those on the Transfer No. 12, when she was some distance away, saw Betty Lee's port running lights on her own starboard bow, and those on Russell No. 3 should have. On the face of it, therefore, Betty Lee had a privilege against both Transfer No. 12 and Russell No. 3 if she held her course and speed. It is also clear that despite her privilege Betty Lee planned to pass under the stern of Transfer No. 12, which was evidently proceeding up the river at good speed and certainly much faster than Russell No. 3. Just after Betty Lee did pass under the stern of the Transfer No. 12 and her tow, the collision occurred, Florence Hines being struck by the bow of Val No. 1 on the port side aft and damaged from the top log down to the first plank above the bilge log.

Betty Lee claims fault against Russell No. 3 because the latter did not keep out of the way under the starboard hand rule. Russell No. 3 denies that it was a starboard hand situation, and argues that even if it was, Betty Lee had no right to attempt to go under the stern of the Transfer No. 12 and across the bows of Russell No. 3 in view of the very short distance (about fifty feet, as she claims)[1] between the stern of the carfloats in tow of Transfer No. 12 and the bow of Russell No. 3's barge. In other words, Russell No. 3 argues that even if a starboard hand situation existed (and I cannot see how this could well be denied) Betty Lee was at fault for insisting upon her privilege under the circumstances.

But to sustain this position the master of Russell No. 3 says that he first saw Betty Lee's port running light right ahead of his own bow and only 75 feet away, whereupon he went full speed astern, this maneuver throwing his head to port. Russell No. 3 is about 80 feet long overall, and the barge she was towing on her starboard side, Val No. 1, has a length of 172 feet and a beam of 38 feet. At the time, the freeboard of the barge was at most only a foot. Even allowing for the long overlap between the bow of the barge and the bow of Russell No. 3, when made up in this fashion, it is very difficult to understand this version of what preceded the collision. Russell No. 3 should have seen Betty Lee much earlier than she did.

A neutral witness called by Russell No. 3 was a member of the crew of Transfer No. 12. He says he saw Betty Lee's port running light as she approached from the Brooklyn shore, and it is obvious that when he first observed the Betty Lee the latter was a considerable distance away. This neutral witness watched Betty Lee as she approached. As she drew closer Betty Lee showed red and green and then closed out red and passed safely under the stern of the Transfer No. 12. This was not due to a change in course by Betty Lee; it was simply that seen from Transfer No. 12 she gradually drew aft, holding steady on her course.

If the neutral witness on Transfer No. 12 saw all this it is inconceivable that with any proper lookout Russell No. 3 did not see the port running light of Betty Lee until it was almost dead ahead and only 75 feet away. Betty Lee says she saw the starboard light of Russell No. 3, and the port light gradually opening.

---

[1] A neutral witness on Transfer No. 12 agrees with this, but I think he was mistaken.

It is obvious to me that Betty Lee had a privilege against Russell No. 3. At its best the argument in favor of the latter resolves itself into the contention, (1) that having elected to pass under the stern of the Transfer No. 12, which was a burdened vessel, Betty Lee was in no position to insist upon the starboard hand rule as against Russell No. 3 which, though also under a burden, was immediately astern of Transfer No. 12; (2) that it was bad navigation for Betty Lee, even though the favored vessel, to attempt to get in between the two tows; (3) that Betty Lee must have taken a rank sheer to port. The last contention can be disposed of summarily; there is no evidence in the case whatever, and scarcely any ground for conjecture, that Betty Lee did anything but hold a steady course—at least this is how I read the testimony of the neutral witness on the Transfer No. 12.

So the claim of fault on the part of Betty Lee narrows down to the argument that not having asserted her privilege against Transfer No. 12, she was at fault for standing on it so far as Russell No. 3 was concerned. But I suspect that the real cause of the collision was the unwillingness of the master of the Russell No. 3 to yield when he should have. Just before the collision the Transfer No. 12 passed him on his port side. This put him on the starboard quarter of Transfer No. 12. He then changed his own course slightly to port because his intention was to keep to the Manhattan shore, which gave him a more favorable position in view of the state of the wind and tide. I have indicated that I do not believe, as he made this change of course, he was as close to Transfer No. 12 as he says he was. But no matter what the distance was he then put himself on a course no longer at a wide angle to that of the Betty Lee. He was now on a sharply converging course. There was every reason why he should not have done this and no reason except his own convenience why he should. If he saw Betty Lee as early as Transfer No. 12 had, then he knew he was under a duty to keep out of the way so long as Betty Lee held her course. He was in much better condition to maneuver than was the Betty Lee for the latter was being set down by the wind and ebb tide toward Governor's Island into a pocket, whereas he was stemming the tide. But if he saw the running lights of Betty Lee at all, even a slight sheer to port [2] was exactly the wrong maneuver.

Effort was made at the trial to charge Betty Lee with fault because of an improper lookout. To sustain this quite circumstantial argument it was shown that Betty Lee's pilot house was 13 feet 2 inches above the water line. Assuming that the Florence Hines had a freeboard of about 9 feet, and the ducks were 7 feet in height, this would place the top of the cargo on the Florence Hines 15 or 16 feet over the water line, or three or four feet above the deck of Betty Lee's pilot house. From this it is urged that neither the master of the Betty Lee nor the helmsman could have seen anything to port. But I think they could and did. The crew of Transfer No. 12 certainly saw Betty Lee's running lights. Russell No. 3 puts herself very close to Transfer No. 12 at that time and she should have seen them also. The crew on Betty Lee say they saw not only the lights of Transfer No. 12, but also those of Russell No. 3, and the manner in which Betty Lee passed under the stern of the former, bears them out. Moreover, the failure to exchange signals indicates that nobody had any doubts about the situation.

Everything about the case strongly suggests to me that Russell No. 3, swayed by her desire to go over toward the Manhattan side, attempted to cross Betty Lee's bows in violation of her duty. It may be that the master of the Russell No. 3 during or just after his sheer to port, did not see the Betty Lee soon enough, and his evidence shows that this was at least one factor in the collision. Even so, it is also a fault.

Libellant is entitled to a decree holding Russell No. 3 solely at fault.

[2] The master of Russell No. 3 suggests that he merely sheered over, and then fell in astern of Transfer No. 12.