**TANKER HYGRADE NO. 24, Inc.**

v.

**THE DYNAMIC et al.**

**THE HYGRADE NO. 24.**

**THE CHOCTAW.**

No. 204, Docket 22979.

United States Court of Appeals, Second Circuit.

Argued March 2, 1954.

Decided June 3, 1954.

**454**

Purdy, Lamb & Catoggio, New York City (Vincent A. Catoggio, New York City, of counsel), for claimant-appellant.

Foley & Martin, New York City (Christopher E. Heckman, New York City, of counsel), for libellant-appellee.

Before CHASE, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CHASE, Chief Judge.

Tanker Hygrade No. 24, Inc., the owner of the barge "Hygrade No. 24" brought this suit against the tug "Dynamic" to recover the damages alleged to have been sustained by the barge through the sole fault of the tug. Conners-Standard Marine Corporation, owner of the tug, appearing as claimant, denied the allegations of fault in the libel and filed a cross-libel alleging that the tug "Choctaw," which had the barge in tow when it was injured, was solely at fault for the damage to it. There was a trial on the merits at which the claimant and cross-libellant rested at the close of the libellant's evidence. The cross-libel was dismissed and no appeal has been taken from that part of the decree. The "Dynamic" was held solely at fault in an interlocutory decree from which the claimant of the "Dynamic" has appealed.

The appellant contends the findings so lack support in the evidence that they are clearly erroneous; that they correspond too closely in substance and language to parts of the libellant's trial brief to be a compliance with Admiralty Rule 46½ of the Supreme Court, 28 U.S.C.A.; and that, the evidence was inherently too implausible to support the findings.

The findings made by the trial judge were substantially as follows:

At about a quarter past eleven on the clear morning of July 30, 1948, the tug "Choctaw" was push-towing the barge "Hygrade No. 24" westerly in the New York State Barge Canal near Tonawanda, N. Y. The middle of the stern of the barge was tightly held against the stem of the tug by two cables, one running from each side of the stern of the barge to a bitt on the corresponding side of the stern of the tug which was being navigated by a licensed and competent captain. The "Hygrade No. 24" was a tank barge 203 feet long and 43 feet wide, loaded to a draft of nine and one-half feet. The tug was sixty-nine feet long and twenty feet wide with 450 diesel horse power. The tug approached a bend to the left at a speed of about three miles an hour against the current and as she did so sounded a long bend whistle. She then heard a bend whistle ahead and slowed her speed to about a mile and a half per hour, keeping close to her starboard side of the channel which was there one hundred feet wide and twelve feet deep with sloping banks of gravel with hard and soft spots, rocky in places, the testimony being that the rocks were

small. The wind was blowing at about thirty-five miles an hour from the southwest and its force on vessels in the canal tended to set them over toward the north bank on the starboard side of the "Choctaw."

The vessel which had sounded the bend whistle that was heard just after the "Choctaw" had sounded hers was the tug "Dynamic." She had done that as she entered another bend westerly of that which the "Choctaw" was approaching when she signalled. That second bend was another to the left of the "Choctaw" but one to the right of the "Dynamic" which was proceeding easterly with two light barges tandem on hawsers, the bow of the leading barge being fifty or sixty feet from the stern of the barge. Each of the barges, which were the "C. M. C. No. 20" and the "C. M. C. No. 30," was about one hundred feet long, and each drew only about eighteen inches of water. The sides of each extended above the water about eleven feet.

The "Dynamic" and her tow, with the current under foot, came into the space between the two bends and the two tugs were in sight of each other when they were about one thousand feet apart, with the "Dynamic" in midstream. The "Choctaw" then sounded a one blast signal for a port to port passing which the "Dynamic" answered with one. While the two tugs were navigating to comply with this agreement the "Dynamic's" tow started to swing over toward its port and toward the north side of the canal ahead of the "Choctaw" and her tow and the "Choctaw" swung her tow to the right until the starboard quarter of the "Hygrade No. 24" pulled up against the north bank of the canal and came to rest. While the "Hygrade No. 24" was thus on the bank the tug "Dynamic" came on and passed safely port to port but did not keep her tow straight behind her and the first barge in her tow "brushed" the port bow corner of the "Hygrade No. 24" as she passed. Apparently no damage was caused by this "brushing" but the second barge in the tow hit the bow of the "Hygrade No. 24" and pushed the starboard side of that barge farther on the bank which was hard with rocks. Her bottom was damaged though not her bow where the barge struck her. The "Dynamic" then went on with her tow and the "Choctaw," after maneuvering to get the "Hygrade No. 24" off the bank, towed her to Tonawanda where her cargo was discharged and from there to New York without cargo where she was put in dry dock and surveyed. The "Dynamic" was held solely at fault for failing to navigate so as to keep her tow under control and pass with it port to port in compliance with the passing signals the tugs had exchanged.

■ As the evidence amply supports the findings above paraphrased, the appellant has failed to show that they are clearly erroneous unless the circumstances thus shown to have been the setting of the accident were so improbable that the evidence should be rejected as inherently unworthy of belief. Far from that, it seems to us to have been entirely plausible. To be sure the "Hygrade No. 24" was heavy with cargo and drew nine and one-half feet. She did, indeed, have aboard about two thousand tons of fuel oil and her weight was greatly in excess of that of the light barge which struck her and pushed her farther on the bank of the canal. Though her bow was not injured by the collision the evidence showed it to have been of sturdy construction and we are not prepared to say that it must necessarily have been damaged if struck hard enough to push the "Hygrade No. 24" farther onto the bank as the judge found or that the force could not have been sufficient so to move the barge. Nor are we able to say that the bottom of the barge which hit the bank was not injured on this occasion. It was an occurrence likely to cause damage. There was undisputed evidence to the effect that the barge was not injured between the time she was pulled off the bank and was dry docked and the bargee testified that he could not remember her having been grounded before during that year and that he did not think she had been. It is reasonable to believe that

what damage was done when she was grounded on this occasion and dry docked so soon afterwards would have been sufficiently different in appearance from any old damage as to have been recognized as new when the survey was made.

Though the bargee was on the "Hygrade No. 24," he was not at the bow while the tugs were trying to pass, but it is undisputed that when the passing signals were exchanged the navigators of two tugs knew the situation which confronted them. That was when they came into sight of each other and were about a thousand feet apart. There is no reason to believe that a lookout on the bow of the "Hygrade No. 24" could have given the "Choctaw's" captain any more timely warning of the approach of "Dynamic" than he actually did get or that any lack of a lookout contributed to bring about what happened. The "Choctaw" gave the "Dynamic" all the room she could and the fault of the "Dynamic" in bringing her tow into collision with a grounded barge is so clear that, even if there were doubt as to the management of the "Choctaw" and her tow it should be resolved in her favor. The City of New York, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84; The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053; The Victory & The Plymothian, 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 519.

In form the findings of fact and conclusions of law were in compliance with Admiralty Rule No. 46½, supra, but it is apparent that the trial judge did adopt to a considerable extent the views and language of counsel for the libellant. Since so doing was justified by the evidence the judge was at liberty to believe and since he gave proper effect to that evidence we find no error. The Severance, 4 Cir., 152 F.2d 916. The responsibility of decision is, of course, that of the judge alone and if he adequately discharges that duty he has performed his function. An appellate court, however, can be more sure that he has done so when his findings and conclusions give unmistakable evidence that he has prepared them as a result of his own independent study and research and will give them weight accordingly. The preferred method was stated in Matton Oil Transfer Corporation v. The Dynamic, 2 Cir., 123 F.2d 999 and we refer to that with emphasis now.

Decree affirmed.