219 F.2d 307
 RED STAR TOWING & TRANSPORTATION CO., as owner of THE tug CHIPPEWA II, Libellant-Appellant,
v.
THE HUDSON, Essex Transportation Company, Claimant-Appellee.
 No. 64.
 Docket 23161.
 United States Court of Appeals, Second Circuit.
 Argued January 4, 1955.
 Decided February 8, 1955.
 
 Macklin, Speer, Hanan & McKernan, New York City, for appellant; Leo F. Hanan, New York City, of counsel.
 Mahar & Mason, New York City, for appellee; Frank C. Mason, New York City, of counsel.
 Before L. HAND and SWAN, Circuit Judges, and DIMOCK, District Judge.
 SWAN, Circuit Judge.
 
 
 1
 This litigation is the result of a collision between two light tugs which occurred in clear weather at 1:45 p. m. on January 21, 1948 at the intersection of the Bayonne Cut and the Greenville Channels in New York Harbor. The district court dismissed the libel on the ground that the libellant failed to sustain the burden of proving fault on the part of the Hudson, claimant's tug. Judge Abruzzo's opinion is reported in 115 F.Supp. 598. The appellant contends that the court erred in dismissing the libel and in not holding the Hudson solely at fault for violation of the starboard hand rule of navigation in a crossing situation.
 
 
 2
 The Bayonne Cut Channel is about 500 feet in width and runs in a generally northerly and southerly direction. The Greenville Channel is much wider and runs in a generally east and west direction. The southeast corner of the intersection of the two channels is marked by a green flashing light, and the collision occurred about 100 feet north and 40 feet west of this light. The libellant's tug, Chippewa II, with the flood tide under foot was proceeding northerly in the Bayonne Cut and was favoring the starboard side of the Cut. The claimant's tug Hudson was proceeding easterly in Greenville Channel. Ahead of her, also proceeding easterly, was a McAllister tug with a tow of two carfloats, one on either side. The Chippewa passed under the stern of the McAllister tow and attempted to pass in front of the Hudson, but the latter's bow struck the Chippewa's port side about 20 feet forward from the stern.
 
 
 3
 Testimony on behalf of the Chippewa placed the Hudson 700 or 800 feet behind the McAllister tow; the Hudson's witnesses put the distance at less than 100 feet. The district court made no specific finding as to the distance; his opinion says that the Hudson was "somewhere" behind the McAllister. Whatever the distance there can be no doubt that when the two light tugs sighted each other they were on crossing courses, the Hudson being to the north and west of the Chippewa and the latter being on the former's starboard bow. Hence the Hudson was the burdened vessel and it was her duty to pass under the stern of the Chippewa, while the Chippewa's duty was to hold her course and speed.[1] It is most amazing that the district court's opinion does not mention the starboard hand rule, for the libel charged that one of the faults of the Hudson, "being the burdened vessel", was her failure to "stop and reverse or go around the stern" of the Chippewa. Without even alluding to this statutory rule of navigation, the opinion states that the Chippewa "was guilty of bad navigation" and her "attempt to maneuver behind the stern of the `McAllister' and in front of the bow of the `Hudson' was extremely dangerous. Careful navigation would have dictated that he [the Chippewa's captain] go under the stern of the `Hudson'." The reverse is true; it was the Hudson's duty to go under the Chippewa's stern. She did nothing to keep clear of the privileged vessel, apparently oblivious to her duty to do so. It was this which created the danger and caused the collision. Her fault is clear.
 
 
 4
 It is argued in the appellee's brief that the Chippewa gave up her privilege because she did not hold her course, but first went to starboard, then to port, which put her "on a course parallel to both the carfloat tow and the Hudson", and then to starboard again, and that this "winding course" brought about the collision. No reason is advanced why the Chippewa should have engaged in so crazy a maneuver, and the court's opinion contains no suggestion that she did. The appellee endeavors to support its contention by certain findings, particularly No. 10 which states that the attempt of the Chippewa to maneuver behind the stern of the McAllister tow and in front of the bow of the Hudson "involved a winding course * * *." The findings of fact and conclusions of law appearing in the record were prepared by counsel for the claimant. Without change they were signed by the judge three weeks after he had filed his opinion. This court has heretofore had occasion to comment on the undesirable character of findings thus made.[2] To the extent that such findings go beyond the facts as stated in the trial judge's opinion, they have less weight on appeal than they would be entitled to if they represented the judge's independent determination. The Severance, 4 Cir., 152 F.2d 916, 918. Neither of the exhibits referred to in Finding 10 supports the appellee's contention that the Chippewa's swing to port put her on a course parallel to the carfloat tow and the Hudson, nor the finding that her navigation involved a "winding course". Indeed, Captain Purdy's diagram (Exhibit A) indicates that in so far as she varied from a straight line, the variation was slight. The contention that the Chippewa relinquished her privileged position is not supported by the record.
 
 
 5
 The only debatable question is whether damages should be divided or the Hudson held solely responsible for the collision. As was said in The Boston Socony, 2 Cir., 63 F.2d 246, 248:
 
 
 6
 "The privileged vessel is always in a difficult situation. The rule is that she must keep her course and speed until it becomes apparent that the burdened vessel cannot alone avoid the collision."
 
 
 7
 The Chippewa's testimony is that she did hold her course and speed until in extremis. Even if Captain Purdy's diagram be accepted as showing a technical violation, her variation from a straight course was so slight that it could not have affected the result, had the Hudson performed her duty as the Chippewa had reason to suppose she would. See Harbor Oil Transport Co. v. The Plattsburgh Socony, 2 Cir., 151 F.2d 708, 709.
 
 
 8
 The judgment is reversed and the cause remanded for entry of a decree holding the Hudson solely responsible.
 
 
 
 Notes:
 
 
 [1]
 33 U.S.C.A. §§ 204, 206; 33 C.F.R. §§ 80.7, 80.9; The Boston Socony, 2 Cir., 63 F.2d 246; The Florence Hines, D.C. E.D.N.Y., 68 F.Supp. 754, affirmed, Staples v. Manhattan Lighterage Corp., 2 Cir., 158 F.2d 284; Connolly v. The Ace, 2 Cir., 164 F.2d 86
 
 
 [2]
 United States v. Forness, 2 Cir., 125 F. 2d 928, 942; Petterson Lighterage & Towing Corp. v. New York Central R. Co., 126 F.2d 992, 996; City of New York v. McLain Lines, 2 Cir., 147 F.2d 393, 395; Tanker Hygrade No. 24 v. The Dynamic, 2 Cir., 213 F.2d 453, 456