NORFOLK, BALTIMORE and CAROLINA LINE, Inc., claimant-respondent, Appellant,

v.

YACHTS, Inc., as owner of THE YACHT SUNSET, Appellee.

No. 7038.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 12, 1955.

Decided Nov. 4, 1955.

John W. Oast, Jr., Norfolk, Va., and John Herbert W. Small, Elizabeth City, N. C., for appellant.

Edward J. Ryan, New York City (W. A. Worth, Elizabeth City, N. C., and Christopher E. Heckman, New York City, on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and THOMSEN, District Judge.

DOBIE, Circuit Judge.

Yachts, Incorporated, owner of the yacht SUNSET, filed a libel in the United States District Court for the Eastern District of North Carolina, against Norfolk, Baltimore and Carolina Line, a Virginia corporation (hereinafter called Norfolk Line), owner of the tug EDWARD F. FARRINGTON and the barge CHARLESTON. The libel sought damages for injuries to the yacht, arising out of a collision between the yacht and the barge. The District Court held that the yacht was free from fault, that both the barge and the tug were at fault and that the faults of the barge and tug were the proximate causes of the collision. Norfolk Line has duly appealed to us.

The District Judge made the following Findings of Fact, 130 F.Supp. 542, 543:

"3. Shortly after 8:00 a. m. on May 29, 1952, the tug was towing the barge on a single 40-foot hawser astern and proceeding southwardly in the intracoastal Waterway. The yacht was proceeding northwardly in the Waterway, bound for New York. A short distance south of beacon number 90 in or near Price Creek, approximately 19 miles north of Charleston, South Carolina, a collision occurred between the yacht and the barge, doing extensive damage to the yacht and none to the barge.

"4. In this immediate area the Waterway channel is 90 feet wide and 12 feet deep. The sides of the dredged channel rise rather sharply from the 12-foot depth to the depth of the surrounding water. The distance between the banks of the stream is variously estimated by witnesses as between 150 and 300 feet. The channel just south of beacon 90 is nearer the western than the eastern bank of the stream. The channel is straight for a considerable distance on either side of beacon 90; it makes a 43-degree turn at the beacon, the turn being to the right for southbound vessels and to the left for northbound vessels. Right at the beacon the channel is widened on its western side, cutting off the inside corner of the bend. In this vicinity the Waterway traverses low marsh land and there is nothing to obstruct the

view for several miles. On the morning of the collision the weather was fair and visibility was good.

"5. The tug and barge were making approximately 5 or 6 miles per hour as they proceeded southwardly down the center of the Waterway, approaching beacon 90. The yacht's speed was 7½ knots. When both vessels were one-quarter of a mile from the beacon the tug sounded one blast and the yacht answered with a one-whistle signal. The tug slowed to half speed, about four miles per hour, went to her right-hand side of the channel and proceeded around the bend.

"6. When the whistle signals were exchanged the yacht, which was in its own, or eastern half of the channel, stopped its propellers, pulled to the right and gradually lost headway.

"7. The barge, in tow of the tug, commenced the turn at the beacon. The tug, hugging the western side of the channel, reduced to slow speed and was moving between one and two miles per hour. The barge hit bottom on its starboard side and sheered to port, its bow crossing over into the eastern half of the channel. The yacht captain, seeing the danger, gave emergency full speed ahead and turned right toward the eastern bank, but hit bottom and was not able to avoid the collision. The port bow of the barge struck the port side of the yacht amidships.

"8. The point of collision was a short distance south of beacon 90 and on the eastern side of the mid-channel line of the Waterway channel.

"9. Neither the tug nor the yacht sounded danger signals prior to the collision."

The District Judge also handed down the following Conclusions of Law:

"1. The collision was caused by faulty navigation in the following respects:

"(a) The barge was at fault in failing to follow the course of the tug, in sheering to port and crossing over into the eastern half of the intracoastal Waterway channel, in violation of the narrow channel rule, 33 U.S.C.A. § 210, which rule is applicable to said channel.

"(b) The tug was at fault in failing to control the movements of the barge and in failing either to prevent the barge from sheering or to correct the sheer so that the barge would not cross over into the eastern half of the Waterway channel.

"2. The yacht was not at fault.

"3. The respondent, Norfolk, Baltimore and Carolina Line, Inc., is liable to libelant for the damages sustained by it as a proximate result of the collision. In the absence of a stipulation of the parties as to the amount of damages, the Court will later determine the amount thereof, together with interest and costs."

 The real question in this case is just where the collision occurred. There were, as is not unusual in admiralty collision cases, very sharp and very many conflicts in the testimony on this question. Questions of the credibility of witnesses are, of course, for the District Court. In this case, the District Court believed the testimony of the witnesses for the yacht, that the collision occurred on the Eastern side of the channel, where the yacht properly was and where the barge should not have been. The testimony of the yacht's witnesses lent ample support for the findings of the District Court and the surrounding circumstances certainly lent credence to the testimony of these witnesses: Adams, manager of Yachts, Incorporated; Wilkinson, master of the SUNSET; Frappier, mate-engineer of the SUNSET, and Parker and Miller, passengers on the SUNSET.

There could be little controversy as to the applicable law here involved. See,

the following cases, cited in the District Court's opinion: The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126; P. Dougherty Co. v. United States, 3 Cir., 207 F.2d 626, certiorari denied 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1068; Tanker Hygrade No. 24, Inc., v. The Dynamic, 2 Cir., 213 F.2d 453; Gatewood v. Sanders, 4 Cir., 152 F.2d 379, certiorari denied 328 U.S. 848, 66 S.Ct. 1119, 90 L.Ed. 1621; Wood Towing Corp. v. Paco Tankers, Inc., 4 Cir., 152 F.2d 258; Indian Ridge Canning Co. v. The Captain Nick, D.C., 98 F.Supp. 664; The Alabama, 4 Cir., 126 F. 332, certiorari denied 193 U.S. 669, 24 S.Ct. 851, 48 L.Ed. 840; The Sulphite, D.C., 73 F.Supp. 137.

The decree of the District Court is affirmed.

Affirmed.