YACHTS, INC., as owner of THE Yacht SUNSET, Libellant,

v.

THE Tug EDWARD F. FARRINGTON, THE Barge CHARLESTON, their engines, tackle, apparel and equipment, and Norfolk, Baltimore and Carolina Line, Inc., Respondent.

No. 274.

United States District Court
E. D. North Carolina,
Elizabeth City Division.

Dec. 12, 1956.

Worth & Horner, Elizabeth City, N. C., Foley & Martin, New York City, for libellant.

John W. Oast, Jr., Norfolk, Va., J. Herbert W. Small, Elizabeth City, N. C., for respondent.

GILLIAM, District Judge.

The liability of respondent for damages to the Sunset was heretofore determined in this proceeding, D.C., 130 F.Supp. 542; Norfolk, Baltimore and Carolina v. Yachts, Inc., 4 Cir., 226 F.

2d 855. Testimony has now been taken with respect to the amount of such damages.

The amount now claimed by the libellant, certain reductions having been conceded at the hearing, is $21,934.33, with interest from various dates, shown by the following tabulation:

Elizabeth City Shipyard, repairs

| | |
|---|---|
| Invoice of 7/15/52 | $12,276.00 |
| Invoice of 7/15/52 | 881.55 |
| Invoice of 6/17/52 | 267.30 |
| (the above items bear interest from 7/15/52) | |
| Telegrams, telephone calls, transportation expenses to Coast Guard | 55.50 |
| (with interest from 7/15/52) | |
| Replaced set of broken dishes | 250.00 |
| (with interest from 12/1/52) | |
| Replaced broken lamp dome | 5.00 |
| (with interest from 12/1/52) | |
| Replaced cork green buoy and gold lettering | 22.40 |
| (with interest from 12/1/52) | |
| Sanding and painting starboard single stateroom and adjoining bath and after stateroom; after bath and passageway | 286.40 |
| (with interest from 7/15/53) | |
| 1 launch cover | 55.00 |
| (with interest from 7/16/52) | |
| General Electric searchlight | 50.18 |
| (with interest from 12/1/52) | |
| Surveyor's fee attending survey | 285.00 |
| (with interest from 7/15/52) | |
| Loss of charter, 1 month | 7,500.00 |
| (with interest from 8/1/52) | |
| | $21,934.33 |

The respondent insists that the recovery should be much less, in no event more than $4,069.91, asserting and offering evidence tending to prove that the prices charged by the Elizabeth City Shipyard, where the repairs were made, were unreasonably high, and that many of the items included in the claim of libellant are for labor and material not required to repair damages attributable to the collision. Respondent further claims that the proof of loss of charter of the yacht during the period of more than thirty days when it was laid up for repairs is not sufficiently definite to justify a finding against the respondent on this score.

There appears to be no doubt of what the proper rule is for measuring the quantum of damages recoverable. In The Pocahontas, 2 Cir., 109 F.2d 929, 931, it is stated: "The principle to be applied in awarding damages to the own-

er of a vessel injured in collision is simple * * *. Strictly, the measure of damages is the difference in value of the ship before and after the collision, but the cost of the necessary repairs and the loss of earnings while they are being made have long been regarded as its equivalent * * *." The Atlas, 93 U. S. 302, 23 L.Ed. 863, declares: "Restitutio in integrum is the leading maxim * * * and * * * the rule followed by the Admiralty Courts * * * is that the damage assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the injury was inflicted." It seems to be also settled law in Admiralty that when the owner of a vessel is suing a wrong-doer for the cost of repairs, it is not incumbent upon him to prove the repair bill in the same manner as if a repairer were suing his customer for work, labor, material and services. He does not have to produce time and material bills, but may depend upon proof showing the fair and reasonable cost of the repairs. I quote from the opinion in Pennsylvania R. Co. v. Downer Towing Corp., 2 Cir., 11 F.2d 466, 467, 468: "If this libelant had tried to follow the course offered in The Spica, and failed, that failure might have been punished; but there was no compulsion to pursue that path in this last case, if familiar admiralty practice points out another.

"We think there is another, and libelant followed it. By producing surveyors, the general nature and extent of damage was shown. The survey itself was not evidence against Downer Corporation, because it had not attended (The Westchester, 2 Cir., 254 F. 576); but the evidence of those who saw the boat and signed the survey was not denied. By producing an expert ship carpenter libelant showed that what the surveyor saw * * *, and it was admitted that said shipyard rendered a bill * * * and it was proven that [the bill covered only the survey charges]. Finally, libelant showed that it had paid the bill, and that the items of charges

thereon were reasonable. * * * By every canon of admiralty procedure in collision causes, this was a prima facie case * * *."

Following the collision on May 29, 1952, the Sunset, on or about June 3, was drydocked for survey and repairs. Upon notice given by the owner of the yacht, his underwriter engaged Mr. M. B. Ward, Jr. to survey the vessel to ascertain the extent and amount of damage which it would be required to pay under the insurance policy. Respondent received no notice of the proposed survey and did not attend.

As a result of Mr. Ward's survey and with the approval of the owner of the yacht, it was agreed by Ward and W. T. Van Sant, President of Elizabeth City Shipyard, Inc., that a reasonable and proper cost of certain necessary repairs attributable to the collision would be $12,426, and the parties agreed that Elizabeth City Shipyard would make such repairs for that amount. During the course of making these repairs it appeared that certain additional repairs were required, that is, 258 feet of extra caulking, and removing all shafts, checking in lathe, and reconditioning propeller; it was then agreed that the former be done by Elizabeth City Shipyard at a cost of $267.30, the latter for $881.55. These two items made the total agreed price to be paid the shipyard for all repairs $13,574.85. However, certain repairs included in the survey and contract were by agreement eliminated and it was agreed that $150 be deducted from the bill; this reduced the amount for all repairs agreed upon by Van Sant, Ward and the owner to $13,424.85. It is not seriously argued that these repairs were not made, but respondent is quite serious in its position that the charges were unreasonable and that some of the repairs made were not made necessary by the collision.

Subsequent to the agreement reached between the owner, Van Sant, and Ward, libellant claims that other necessary repairs and replacements were made and expenses paid by libellant. These

amount to $1,009.48, as follows: sanding and painting starboard single stateroom and adjoining bath and after stateroom, after bath and passageway, $286.-40; launch cover, $55.00; telegrams, telephone calls, transportation expenses to Coast Guard, $55.50; new set of dishes, $250; broken lamp dome, $5; new cork green buoy and gold lettering, $22.-40; search light, $50.18; surveyor's fee, $285. So that, the total claim of libellant for repairs and incidental expenses is $14,434.33. In addition, libellant claims $7,500 for loss of use of the yacht for the more than thirty days necessary for making the repairs. Thus, the libellant is now insisting it is entitled to recover $21,934.33 and certain interest.

■ Libellant established that it and its insurance carrier paid each and every item of repairs and expenses included in its claim as set out in the tabulation beginning on page 1 of this memorandum and offered evidence tending to prove that all of said items represent damage sustained in the collision, and also that the charges were fair and reasonable. In respect of the repairs, then, libellant established a prima facie case. Pennsylvania R. Co. v. Downer Towing Corp., above.

In respondent's brief its proctors set forth their case against libellant's claim as follows: (1) There was no survey; (2) Many of the items of damage in the libellant's list of repairs are not collision damage; (3) The shipyard's charges are excessive; (4) The libellant has suffered no detention damage; (5) The recovery of libellant should not exceed $4,-089.91.

■ (1) *There was no survey.* I agree that there was no survey in the technical sense, as I find there was no notice and respondent did not attend. But, even so, the testimony of Ward, a marine surveyor, who appraised the damage to the vessel and reached an agreement for repairs to be paid by his client, libellant's underwriter, was competent, not for the purpose of binding the respondent, but merely to show the extent of the damage and the reasonableness of the charges for the repairs. As there was no survey, the libellant is not entitled to recover the item of $285 charged as "Surveyor's fee attending survey." There are cases holding that the cost of a survey is recoverable where notice is given and the party to be charged attended; but such is not the case here.

■ (2) *Many of the items of damage in the libellant's list of repairs are not collision damage.* The libellant's case in this respect is substantiated by witnesses who saw and inspected the Sunset in its damaged condition, one of whom represented the carrier who was obligated to pay the cost of the repairs, another, the President of the shipyard, who is believed by the Court to be reliable. I am unwilling to find that any charge in the claim for repairs is for work not reasonably necessary in order to fully compensate libellant for damages sustained by the collision.

■ (3) *The Shipyard's charges are excessive.* Respondent's case on this contention is based: (a) on the opinions of experts who for the first time inspected the vessel long after the repairs were made, and who, of course, were giving their opinions with the knowledge that they could not be called upon to make the repairs for the estimates they gave, and (b) on the totals shown by the time and material sheets produced by the shipyard. But it has to be borne in mind that the production came four years after the repairs were made and with no clear proof that all the sheets were found. The proof for the libellant in regard to the reasonableness of the charges is convincing, sufficiently so to withstand respondent's attack. Immediately after the collision, the owner of the Sunset notified his insurance broker and the yacht proceeded to the shipyard. There the owner met with Mr. Ward, Marine Surveyor, representing the yacht's insurance underwriter, and Mr. Van Sant, President of the shipyard, and after inspection of the vessel specifications which satisfied the divergent interests of the three parties were drafted. The owner, quite naturally, insisted that

his yacht be restored to her condition immediately prior to the collision; the representative of the insurance carrier, quite naturally also, insisted that no repairs be included which were not made necessary by the collision and that the prices charged be reasonable and in line; and the President of the shipyard, it can be assumed, was interested in getting at least fair and reasonable compensation for such repairs as were to be effected. The Shipyard representative determined the scope of necessary repairs and after nearly a day of discussion among the three and arguments pro and con as to prices and propriety of the various items in the specifications, final agreement on the specifications and a price for all repairs, including a profit, was reached. The work was done and the bill was paid by the owner through his insurance carrier, which found no fault with the extent of the repairs or the charges made. I can see no reason for thinking that there was collusion and that outside repairs were deliberately included and unreasonable prices intentionally charged, particularly as the interests of the owner and of the insurance carrier were adverse. I find that the agreement was entered into in good faith. And Van Sant and Ward expressed the definite opinion that the repairs were necessary and accomplished at a reasonable and fair price. The contract for the repairs having been made in good faith and the price agreed upon having been paid by a party bound thereby, such contract should not be upset or ignored in the absence of evidence showing clearly that it was unfair from the standpoint of respondent which is now called upon to repay the amount paid thereunder. The evidence for respondent falls short and my holding is that libellant should recover the actual cost of the repairs.

■ It should be noted that respondent failed to call as a witness a Mr. Hockaday, a marine surveyor, who represented respondent's insurer and inspected the Sunset at the shipyard in July, 1952, and submitted a written report of his findings, contents of which were made known to respondent. The Court is justified in taking it for granted that evidence of Hockaday's findings would have weakened respondent's contention with respect to the reasonableness of libellant's claim. The New York, 175 U.S. 187, 204–205, 20 S.Ct. 67, 44 L.Ed. 126.

■ (4) *The libellant has suffered no detention damage.* It is not denied that such as were suffered and established are recoverable. This Court considered the question in Gulf Atlantic Transportation Co. v. Becker County Sand & Gravel Co., D.C., 122 F.Supp. 13, and in that case at pages 18 and 19 stated: "In cases of damage, less than total, to a vessel by reason of collision * * * the measure of damages is the cost of restoring the vessel * * * and, in addition, damages for the loss of the vessel's services during the period of repairs * * *."

■ The cases hold that such loss of services must be shown with reasonable certainty. No doubt of one thing— the owner lost the services of the yacht from May 29, 1952 through July 15, 1952. It had been and would have been available for commercial charter during this period but for the collision. The market value for its charter is found to have been at the time in the neighborhood of $7,500 per month. It is reasonable to believe that there was some pecuniary loss to the owner while the yacht was laid up. It was actually chartered on June 24, 1952, for the period from August 1, 1952 to September 8, 1952, at the charter price of $7,500, and at least there were negotiations pending for its charter during the period from June 1, 1952 to August 1, 1952. I agree with respondent's counsel that the testimony of the witness Wells in regard to any charter arranged for the period in question should be stricken, as such arrangement as may have made was not handled by him and was not personally known to him. But his testimony and that of the witness Raymond, together with the owner's testimony, clearly show that there was a strong probability that if the collision had not occurred the yacht would have been chartered at its

market value of $7,500 for at least a part of the time from June 1 to July 15. The fact that libellant did not, as probably it could not, prove definitely and exactly what the loss was should not under the modern view prevent any recovery whatever. I hold that it appears with reasonable certainty that libellant sustained a loss on this count of $4,000. It is true that the yacht would have been chartered with full crew and, therefore, the net loss, had the crew been discharged, would not have been as great; but the crew was not discharged, because of the difficulty always met in recruiting a new crew and the importance of keeping intact a crew which has been found satisfactory and which has experience. "The libelant was not obliged to dismiss his crew in minimization of his damages." The Vanadis, D.C., 250 F. 1010, 1011.

In the account there are several other items, such as incidental expenses and necessary replacements and repairs made after the Sunset left the shipyard. Respondent finds fault with some of these charges but I find all of them proper. They were replacements and expenses attributable to the collision and the charges were fair and reasonable.

(5) *The recovery of libellant should not exceed $4,089.91.* As already indicated, I do not agree. The finding of the Court is that libellant is entitled to recover the sum of $18,149.33 as follows:

1. For repairs made by Elizabeth City Shipyard and paid:

| | |
|---|---|
| Invoice 7/15/52 less $150. $12,276.00 | |
| Invoice 7/15/52 881.55 | |
| Invoice 6/17/52 267.30 | |
| Total | $13,424.85 |

2. For expenses and other necessary replacements and repairs made and paid, to-wit:

| | |
|---|---|
| Telegrams, telephone calls, and transportation to Coast Guard, as of 7/15/52 $ 55.50 | |
| New set of dishes, as of 12/1/52 250.00 | |
| Broken lamp dome, as of 12/1/52 5.00 | |
| Green buoy, as of 12/1/52 22.40 | |
| Painting starboard single stateroom, bath, after stateroom, bath and passageway, as of 7/15/53 286.40 | |
| Launch cover, as of 7/15/52 55.00 | |
| Searchlight, as of 12/1/52 50.18 | |
| Total | $ 724.48 |

3. For loss of use $ 4,000.00

$18,149.33

As the libellant is entitled to be made whole by allowing full compensation for pecuniary loss sustained, I further find the recovery should include interest on each item from the date of payment as above indicated, and on the item of lost earnings, from August 1, 1952.

A decree accordingly will enter.