**SEABOARD AIR LINE RAILROAD COMPANY, a Corporation,**
Libelant,

v.

**MARINE INDUSTRIES, INC.,**
Respondent (two cases).

Nos. 1174, 1175.

United States District Court
E. D. South Carolina,
Charleston Division.

Dec. 28, 1964.

Buist, Buist, Smythe & Smythe, Charleston, S. C., for libelant.

Moore, Mouzon & McGee, Charleston, S. C., for respondent.

SIMONS, District Judge.

These cases arise out of two separate collisions between barges being pushed by respondent's Tug Kathy Ann and dolphin and timbers protecting libelant's railroad drawbridge over the Ashley River while the draw was fully opened

and Tug and barge were attempting to proceed through the opened draw. The collision set forth in Case #1174 occurred on February 27, 1962, and that in Case #1175 occurred on March 2, 1962.

Each Libel asked for damages, together with interest and costs. Each Answer was a general denial.

When cases came on for trial, parties submitted the issues to court without testimony upon agreed statement, as follows:

"It is stipulated by the proctors for the parties as follows:

"1. That respondent is responsible to the libelant for negligent damage to libelant's property.

"2. That the two cases be treated as one.

"3. That prior to the two accidents the piling and timbers damaged had depreciated to the extent of fifty [50%] percent.

"4. That the cost of repairing the damage was Seven thousand thirty-seven and 99/100 [$7,037.99] Dollars.

"5. That of this amount, Four thousand six hundred [$4,600.00] Dollars was paid to Salmons Dredging Company to cover the cost of moving floating equipment necessary to perfect the repairs to the site, the hauling of the materials used in perfecting the repairs to the site, and the installation of the materials. Included in this item of costs was nuts, bolts, nails, wire for tying cluster piles together, and one lantern destroyed in the first collision.

"6. That a proper allocation of the value of these materials to the over-all cost of Four thousand six hundred [$4,600.00] Dollars is One hundred [$100.00] Dollars.

"7. That the piles and timbers used in repairing the damage were furnished by the libelant and that the difference between the total cost of the repairs and the amount paid to Salmons Dredging Company represents the value of the new materials used in perfecting the repairs.

"8. That had the depreciated piling and timbers been replaced by used material equally depreciated, the labor, costs for the moving of the floating equipment and putting the used materials in place would have been the same as the costs incurred in installing the new material."

Libelant contends that since damages inflicted to bridge in collisions did not result in its total destruction it should recover the total cost of repairs without any allowance for depreciation. In support of this position libelant asserts that since the passage of 46 U.S.C.A. § 740 by Congress on June 19, 1948, extending the admiralty and maritime jurisdiction of the United States to "include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land", the Admiralty Rule as to measure of damages for injury to a ship [owner entitled to recover full cost of repairs even though value of vessel after the repairs is enhanced] [1] has now been extend-

---

1. Wetmore v. The Steamboat Granite State, 3 Wall. 310, 70 U.S. 310, 18 L. Ed. 179; The Steamer Baltimore v. Rowland, 8 Wall. 377, 75 U.S. 377, 19 L.Ed. 463; Shepard Steamship Company v. United States, 111 F.2d 110, [2nd Cir. 1940] in which court stated:

"[W]e must apply the established rule as to damages. Generally speaking it is restitutio in integrum. Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890. But where repairs are made which require the installation of new parts in a vessel to restore her to the condition in which she was before a collision for which another is responsible, the party liable cannot be given credit for the difference between the value of the ship necessarily so repaired and what its value would have been had the old, but still good parts, which the collision made unsuitable for continued use, been undamaged. The Baltimore, 8 Wall. 377, 19 L.Ed. 463;

ed to cover libelant's claim in case at bar. Under such theory respondent would be entitled to *no* deduction for depreciation, even though it is agreed that piling and timbers of the bridge were fifty [50%] percent depreciated in value or useful life at time of damage.

In the alternate, libelant further urges that should any depreciation be allowed, it should be only fifty [50%] percent of the cost of the new materials used in repair; and that there should be no depreciation as to the labor cost, inasmuch as it is agreed that such labor costs would have been the same whether new or used materials be used in making repairs. [Paragraph 8 of stipulation, supra].

Respondent strongly contends that the proper and equitable measure of damages to which libelant is entitled is total cost of repairs, including labor and materials, less fifty [50%] percent allowance for depreciation since the pilings and timbers were fifty [50%] percent depreciated at time of collisions. [Par. 3 of stipulation, supra]. Respondent further contends that the Act of 1948 [46 U.S.C.A. § 740], supra, made no change in the rule or measure of damages recoverable for injury to wharf, bridge or similar structure; and that the courts have always allowed reduced damages in proportion to prior depreciation of the damaged structure, before and after passage of said Act.

The sole issue for determination is the proper measure of damages to which libelant is entitled.

In my consideration of this question. I have been aided substantially by briefs of proctors for both parties. Their able arguments have been studied and all cases cited have been carefully reviewed.

■ Unquestionably libelant is entitled to have its bridge restored to its same condition prior to the subject collisions insofar as reasonably possible.

To do more or less would be inequitable and unjust to either libelant or respondent. Since the bridge was not a total loss and has no readily determinable fair market value, the usual measure of damages, being the difference in fair market value immediately prior to collisions and its value immediately after, cannot be applied in practicality by the court. Thus, the ends of justice demand that the measure of damages must necessarily be predicated upon reasonable cost of repairs with proper consideration being given to actual depreciation of the facility at time of its damage.

■ It is my opinion that the Act of 1948, supra, made no change in the rule regulating the amount of damages to be awarded for injury to a wharf, bridge or similar structure. As a matter of fact cases cited hereinafter indicate that in the better reasoned cases courts have held that rule as to damages to wharf, bridge or other similar structures is very little different, if any, from that which the Admiralty courts have applied in cases of damages to ships.

■ It is my considered conclusion that proper depreciation should be allowed in arriving at a fair and equitable measure of damages to depreciated property. Even where vessels have been damaged, courts have allowed depreciation. In Exner Sand and Gravel Corporation v. Maher Stevedoring Corporation [D.C.N.J.1955] A.M.C. 2286 [apparently not reported elsewhere], the court refused to allow the entire cost of repairs to a vessel damaged in collision where the parts replaced were not in good condition at time of accident. There the court awarded only two-thirds of the full cost of repairs to a barge saying:

"We are of the opinion * * * that it would be inequitable to assess the full costs of repairs against the respondent. At the time of the oc-

Navigazione Libera T. S. A. v. Newton Creek Towing Co., 2 Cir., 98 F.2d 694. However much might be said logically to the contrary, the law of damages as applied below is now to be taken as established in a situation like the collision

here involved. It is not to be confused with any special usage in insurance cases or with situations where the part replaced was not in good condition at the time of the accident."

currence the *Florence E.* was admittedly twenty-six years old and had been in service many years. This is a factor which should be taken into consideration in the assessment of damages."

Also in Anthony O'Boyle, Inc. v. Tug Cleveland, [E.D.N.Y.1959] A.M.C. 1172 [apparently not reported elsewhere], where it appeared that a barge damaged by the respondent was old and needed re-caulking the court made a twenty-five percent deduction from the full cost of repairing the damage because it was unable to determine the damages caused by the collision and those brought about by its age.

Likewise in Atkins v. Alabama Dry-dock and Shipbuilding Co., [S.D.Ala.] 195 F.Supp. 944, 949, 1960 A.M.C. 909, the court said:

"It violates reason to find that a responsible party should be obligated to replace in a new condition that which was deteriorated prior to the time he became responsible."

See also Pennsylvania R. Co. v. S. S. Beatrice, 161 F.Supp. 136, [D.C.N.Y. 1958] wherein the court held that the measure of damages is the cost of the restoring of the vessel, not greater than its original value. In Yachts, Inc. v. The Edward F. Farrington, 146 F.Supp. 754, 756 [D.C.N.C.1956], the court quotes from The Atlas, 93 U.S. 302, 23 L.Ed. 863, as follows: "[T]he rule followed by the Admiralty Courts * * * is that the damage assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the injury was inflicted."

Courts have generally allowed depreciation in awarding damages for injury to wharfs, bridges, and similar installations. In General American Transportation Corporation v. Tug Patricia Chotin, [E.D.La.], 120 F.Supp. 246, 249, 1954 A.M.C. 923, the court said: "Since the life expectancy of a pile cluster is twen-

ty years and since the 7 pile cluster was five years old at the time of the collision, libelant is entitled to three-fourths of its replacement cost". In Jemison v. Dredge Duplex, [S.D.Ala.] 163 F.Supp. 947, 1958 A.M.C. 1956, where the cost of repairing a wharf was $3,000.00, the court, having found that there had been a fifty percent depreciation, awarded only $1500.00 damages. In Patterson Terminals, Inc. v. SS. Johannes Frans, [E.D. Pa.], 209 F.Supp. 705, 710, 1962 A.M.C. 2623, the court said:

"In this case, the dolphin had a 25-year life expectancy when it was built in 1946. Therefore, in October, 1958, it had depreciated to approximately 50% of its value. * * * The cost of repairs * * * will be reduced by 50% for previous deterioration and damage." [2]

The case of Beaufort and Morehead R. Co. v. Tug Damyank, 122 F.Supp. 82 [E.D.N.C.1954] cited by libelant affords little support for its claim that no allowance for depreciation should be made. There is no mention in the opinion of any claim for depreciation allowance on part of respondent, and one can only surmise that libelant's damaged bridge was so new or in such excellent condition that it had sustained no significant depreciation prior to its damage by the collision. At page 85 of 122 F.Supp. the court said: "The end in view in assessing damages in a case like this is to restore the damaged party to the position which he held before the damage."

The court has not found nor been cited a single case involving damages to a wharf or bridge in which the court has refused to make an allowance for depreciation, where such question was considered.

In support of its alternate position that even if the court should allow depreciation in instant case it should be extended *only* to the cost of materials used in repair and not to labor costs, libelant cites Patterson Oil Terminals, Inc. v. The Port

2. See also Brooklyn Waterfront Terminal Corp. v. International Terminal Operat-

ing Company, 211 F.Supp. 702 [D.C.N.Y. 1962], affirmed 2 Cir., 311 F.2d 221.

**14**

Covington, 109 F.Supp. 953 [D.C.E.D. Pa.1952]. I do not agree with such interpretation of that case. The facts there were substantially different from those before us now. In that case a dolphin was constructed of interlocking sheet steel piling, filled with river bottom fill and capped with concrete. It had some twelve or thirteen years of useful life expectancy at the time it was struck. The opinion does not indicate whether or not it was replaced with a new dolphin or what this would have cost in materials or in labor. It merely says that for $5,000.00 the dolphin could have been repaired in such a manner that it would have a life expectancy of twelve or thirteen years from the time of accident; and that the repaired dolphin would then last as long as the remaining life of the dolphin if it had not been damaged. The court said at page 956 of 109 F.Supp.: "It [libelant] can ask for no more, and damages in the amount of $5,000 are awarded."

■ New pilings and timbers were used in repairing libelant's bridge, thus it is assumed that the repaired portion of the structure now has a life expectancy 50% longer than such portion had at time of collisions. If this be true, and unless depreciation is allowed for labor and materials, libelant now has a portion of its bridge with a useful life twice as long as it had prior to damage by respondent, *without any cost to it*. If 50% depreciation is allowed only as to cost of the new materials used in repair,[3] libelant will be in the favored position of having the useful life of such portion of its bridge doubled upon expenditure of $1,219.00. Equity and fairness should require libelant to pay for one-half of the total repair cost to such damaged portion of its bridge, if its useful life is doubled as a result of the repairs. Otherwise, libelant will be making a profit as a result of the accident, at the unjust expense of respondent.

In accordance with the foregoing, the court concludes: [1] That libelant cannot recover from respondent the full cost of repairing its bridge with new materials, thereby doubling the useful life of repaired portion thereof; recovery must be reduced in proportion to prior depreciation of the structure; [2] that depreciation is allowed against the entire cost of repairs, without distinction between cost of materials and cost of labor; [3] that libelant shall have judgment against respondent for sum of $3,519.00, representing 50% of its total cost of repairs to its bridge.

And it is so ordered.

---

3. It is noted that the cost of materials [$2438.00] is only a little more than one-third of the total cost of repairs.

[Paragraphs 4 and 5 of stipulation, supra].